## HARTFORD FIRE INS. CO. *v.* SMITH et al.

| | |
|---|---|
| 3 | 422 |
| 4 | 71 |
| 6 | 355 |
| 3 | 422 |
| 15 | 74 |
| 3 | 422 |
| 11a | 253 |
| 3 | 422 |
| 26 | 261 |
| 3 | 422 |
| 20a | 402 |

1. Under the terms of an insurance policy where the insured were required to give immediate notice to the company in case of loss: *Held*, that notice to the company's local agents on the day after the loss was sufficient.

2. Where appropriate words are employed descriptive of the present use of the insured premises, courts will not construe them into a promissory stipulation that the use of the premises shall remain unchanged, unless the intention of the parties to that effect is clearly manifest.

3. Where, under the terms of a policy of insurance, it was provided that "if the premises hereby insured shall become vacant or unoccupied, this policy shall be void," and one of the rooms continued to be occupied nightly as a sleeping apartment by a person engaged in the repair of the building: *Held*, that the building did not become vacant or unoccupied under the meaning of the policy.

4. There must be a substanial compliance with the terms of the policy in furnishing preliminary proofs of loss, unless waived by the insurer. Failure to furnish a copy of all policies covering the insured premises, when the same is required in the preliminary proof, by the terms of the policy, is not a substantial compliance in this particular.

5. If the company put the refusal to pay upon other grounds than of defective proofs, it will be held a complete waiver of the preliminary proofs.

6. An agent having special authority to adjust a particular loss cannot, by virtue thereof, adjust a different loss, and whatever he may do with reference to the different loss cannot affect the principal. To bind the principal, it must be shown by competent evidence that the agent acted within the scope of his authority.

7. When incompetent evidence is permitted to go to the jury, and that may have influenced their verdict, the verdict will be set aside. Whenever it appears that there is written evidence of a particular fact, oral evidence must be excluded, or the non-production of the written evidence legally excused.

### Error to Probate Court of Arapahoe County.

This was an action of assumpsit brought by Smith and another, the defendants in error, against the plaintiff in error, upon a policy of insurance against loss by fire. The jury rendered a verdict in favor of the plaintiffs below, and judgment was entered on the verdict. The facts are sufficiently stated in the opinion.

Messrs. SAYRE, WRIGHT & BUTLER, for plaintiff in error.

Mr. C. S. THOMAS, and Mr. T. M. PATTERSON, for defendants in error.

THATCHER, C. J.    By the terms of the policy the assured were required, in case of loss, to give immediate notice thereof to the company.    On the day after the fire, Kassler & Patterson, local agents of the company, whose duty it was, in the event of loss, to notify their principal, wrote a letter to G. F. Bissell, general agent of the company at Chicago, apprising him of the loss.    On the same day, and after the letter was written, the assured notified Kassler & Patterson of the loss, and were informed by them that it was already known to them, and that they had signified the same by letter to the company.    Was this notice of loss given to the local agents sufficient?    It has been held that where the policy requires the notice to be given to a particular officer or agent of the company, that notice to any other officer or agent than the one designated would not be a substantial compliance with the provisions of the policy, and that it would, therefore, be insufficient.    But the policy under consideration contains no such restrictions.    The assured are, therefore, free to give the company notice in any manner they choose.    The only requirement is that the company be apprised of the loss immediately after it occurred.    The notice given to the agents must, under a proper construction of the assured's contract, be held to be a notice to the company.    *Killips* v. *The Putnam Fire Insurance Co.*, 28 Wis. 480.

The fact that the occupancy of the building insured was changed after the issuance of the policy is not deemed to be material.    The statement in the policy that the insured building was "occupied by the tenant for a boarding-house," was but an affirmation of its then existing condition, not promissory in its character.

It is not to be regarded as a warranty that the building

would continue to be occupied in the same way. If a continuing warranty had been intended, it is to be supposed it would have been expressed in more apt language. Where appropriate words are employed, descriptive of the present use of insured premises, courts will not construe them into a promissory stipulation that the use of the premises shall remain unchanged, unless the intention of the parties to that effect is clearly manifest. *Blood* v. *Howard Fire Ins. Co.*, 12 Cush. 472; *Smith* v. *Mechanics & Traders' Ins. Co.*, 32 N. Y. 399; *Hough* v. *City Fire Ins. Co.*, 29 Conn. 10.

It is provided in the policy that "if the premises hereby insured shall become vacant or unoccupied * * * * this policy shall be void." Were the premises vacant or unoccupied within the meaning of the policy at the time of the fire? The building was no longer used as a boarding-house, but as we have seen, the insured were under no obligation to continue its use for that purpose. When the boarding-house tenant vacated the building, Mr. Feely at once occupied it, and continued its occupation until it was burned down. He was engaged in repairing the building, and slept therein every night. One of the rooms was furnished, and used by him as a sleeping apartment. The fact that he took his meals elsewhere does not, in our opinion, operate to defeat the policy. We do not think that the company, by requiring that the building should be occupied, stipulated for a higher degree of care and watchfulness than the occupancy by Mr. Feely implies. While we shall endeavor to guard the rights of insurance companies by a fair and reasonable construction of their contracts, we cannot consent to see frittered away the rights of the insured by an illiberal and unjust interpretation of a policy designed for their (the insured's) protection. We are of opinion that the building did not become vacant or unoccupied within the meaning of the policy. In this view one of the objections of the general manager to the preliminary proof, viz: that the insured failed to set forth the occupancy of the building,

is not valid.  The statement "that the building insured and destroyed was occupied by Patrick Feely as a lodging-house" is sufficient.

As a precedent condition to the right of the assured to recover from the company, a particular account of the loss in the nature of preliminary proofs is required.  The character of this particular account is determined by the policy. Among other things the assured are required in their preliminary proofs to furnish a copy of all policies covering the insured premises, in which respect they failed.   That there must be a substantial compliance with the terms of the policy in furnishing the preliminary proofs before the assured are entitled to any indemnity in case of loss, the authorities are agreed, unless the company waive the defects in the proofs, or waive the proofs altogether, by putting the refusal to pay on other grounds.   *Blake* v. *Exchange Mutual Ins. Co.*, 12 Gray, 270 ; *Franklin Fire Ins. Co.* v. *Coats & Glenn*, 14 Md. 293 ; *Charleston Ins. & Trust Co.* v. *Neve*, 2 McMullen (S. C.), 237 ; *St. Louis Ins. Co.* v. *Kyle*, 11 Mo. 278; *Tayloe* v. *Merchants' Ins. Co.*, 9 How. (U. S.) 390 ; *Hartford Pro. Ins. Co.* v. *Harmer*, 2 Ohio St. 452; *Noyes* v. *Washington County Ins. Co.*, 30 Vt. 659 ; *Peoria Marine & Fire Ins. Co.* v. *Whitehill*, 25 Ill. 470 ; *Vos* v. *Robinson*, 9 Johns. 192 ; *Commonwealth Ins. Co.* v. *Sennett et al.*, 41 Penn. 162.

These authorities abundantly attest that by the acts of the underwriters there may be a complete waiver of the preliminary proofs.   Was there a waiver in this case ?  The general manager of the company at Chicago, after receipt of proof of loss from Smith & Doll, wrote them a letter informing them that the "alleged proof of loss was incomplete and unsatisfactory, and not in accordance with the conditions of the policy in the particular that a copy of the policy was not furnished with and made a part of the alleged proof of loss, and also that the occupancy of the building at the time of the destruction by fire is not set forth in the alleged proof of loss."   Subsequently McLane visited Denver for the purpose of adjusting the losses of the

company on the Rough and Ready mill, which had been destroyed by fire some time before   Mr. Doll testified that McLane offered $250 in satisfaction of the policy, and declared to him that "the only reason why he would not pay the full amount of the loss was, that the house was not rented at the time of the fire." No mention was made of any defects in the preliminary proofs. The refusal to pay was put distinctly upon other grounds than the failure to furnish the "particular account" in accordance with the provisions of the policy. McLane having thus denied liability of the company solely for other reasons than incomplete or defective proof, it must be held that the company waived the condition requiring proof before payment of loss, if McLane acted within the scope of his authority.

"Surely," says Mr. Justice STRONG, speaking for the court in the case of *The Inland Insurance and Deposit Company* v. *Staffer*, 33 Penn. 403, "it cannot be contended that it was not competent for the insurers to waive performance of a formal condition, introduced solely for their own benefit. At most it was a condition precedent not to the undertaking of the insurers, but to the right of action of the insured. It is no new doctrine that insurers may waive objection to defective compliance with such a stipulation, or to entire non-compliance, and that such waiver in effect strikes the condition out of the contract; nor need the waiver be express. It may be inferred from the acts of the insurers evidencing a recognition of liability, or even from their denial of obligation for other reasons."

Under the authorities there was a complete waiver of preliminary proofs, if McLane had power to bind the company.

But the scope of McLane's authority does not sufficiently appear. If it were established either that he was a general adjusting agent of the company, or that he was specially authorized to examine into and adjust the loss of Smith & Doll, we should hold that by his acts the company was

estopped from demanding further preliminary proofs.  The witness', Kassler's, primary knowledge of the agency of McLane was based upon a letter he had received from the · general manager at Chicago, from which he learned that McLane was " a representative and adjuster" of the company, and that he would be sent out to adjust the Rough and Ready mill loss.  This evidence the company moved to exclude on the ground that it was secondary.  This mo- . ·tion was not met with an offer to excuse the absence of the letter.  The letter was, without question, the best evidence of its own contents, and the court erred in permitting secondary evidence to be substituted for it.  As written evidence is higher than oral, whenever it appears, whether in the direct or cross-examination, that there is written evidence of the facts sought to be proved, the inferior evidence must be excluded altogether, or the non-production of the written evidence be legally excused.   1 Phillips' Ev. 470 (5th Am. Ed.)

The motion to exclude the secondary evidence should have been allowed.

It appears that McLane did, in fact, adjust the loss on the Rough and Ready mill, and that upon his adjustment it was paid.  This shows a ratification of his acts in this particular matter.  As the evidence tending to prove his original authority in the form in which it was introduced, was incompetent, and as the only act of McLane, which was subsequently ratified by the company, was his adjustment of the Rough and Ready mill loss, it would be going very far to say that the jury was warranted in finding as it must have done if the verdict is to stand, that the company had waived a strict compliance with the condition of the policy requiring preliminary proof, by reason of any thing that had been said by McLane, to Smith & Doll.  An agent having special authority to adjust a particular loss, cannot, by virtue thereof, adjust a different loss, and whatever he may have asserted with reference to that different loss cannot affect the company.  As in our opinion, the secondary

evidence not being considered, the cause must be remanded for a new trial, we forbear to comment further upon the testimony.

The inquiry as to the scope and extent of McLane's authority being one of fact was, as it should have been, submitted to the jury. *Hough* v. *City Fire Ins. Co.*, 29 Conn. 10; *Keenan* v. *Missouri State Mut. Ins. Co.*, 12 Iowa, 126.

But as there was incompetent evidence before it, that may have largely influenced its verdict, it cannot be permitted to stand.

The judgment of the court below is reversed with costs, and the cause remanded for further proceedings according to law.

*Reversed.*